MARY HELEN CADWALADER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46327. Promulgated April 6, 1933.

*Thomas F. Cadwalader, Esq.,* for the petitioner.
*J. C. Maddox, Esq.,* for the respondent.

OPINION.

MATTHEWS: Petitioner is the sole distributee for life under the will of her deceased husband, the testator, of the " net income " of the estate. The testator appointed his two sons to hold the property in trust for their mother " and to pay to her the net interest and income of my entire estate so long as she shall live."

Section 219 (b) (2) and (3) of the Revenue Act of 1926, applicable here and set out in the margin,[1] provides that income, whether distributed or only distributable to a beneficiary of the trust, may be taken as a deduction by the trustees in determining the net income of the trust, but must be included in computing the net income of the beneficiary. The income of the trust here in question was not held by the trustees as a reserve to restore the *corpus*, nor credited for distribution later to the beneficiary, nor was it in fact distributed to the beneficiary. It was used by the trustees to pay the premiums on certain life insurance policies received by the trustees from the testator as part of the assets of the estate. The peculiar circumstances in which these policies were acquired by the trustees are set out fully in our opinion in *John Cadwalader, Jr., Executor*, 15 B. T. A. 1, and in our findings of fact.

The trustee and the beneficiary, it has long been decided, are under the revenue acts two distinct taxable persons. *Merchants' Loan & Trust Co. v. Smietanka*, 255 U. S. 509. In this proceeding, therefore, we are not concerned with what the trustee might properly deduct in determining the net income of the trust, but only with what was properly includable in the income of the petitioner as beneficiary. We shall, then, leave on one side the extended discussion of counsel of both parties on the question whether premiums paid by the trustees on these life insurance policies were properly

---

[1] SEC. 219. (b) Except as otherwise provided in subdivisions (g) and (h), the tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under paragraph (3) in the same or any succeeding taxable year;

(3) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

deductible by them as losses in determining the net income of the trust.

Was the income of the trust, which was used by the trustees to pay the premiums, income to the petitioner? The respondent contends that the trustees may not burden the life tenant's income with premium payments which will come back only to the remainderman in the form of life insurance proceeds. The premiums are said to be a capital investment. This is clearly a collateral attack and involves petitioner's rights under the will to her distributive share.

We have already said that under the will the petitioner was to receive the " net interest and income " of the testator's entire estate. No question has been raised by the interested parties, neither the petitioner nor remainderman, as to the interpretation of the will adopted by the trustees in treating these payments as necessary charges upon the trust income. The debt owed by Stafford to the testator was long since extinguished by the former's bankruptcy, but the collateral pledged to secure it came to the trustees as assets of the estate. The trustees evidently regarded such payments as the best and only way to salvage this original loan. We have held that a long standing interpretation of a testamentary trust by the interested parties should be given great consideration and not be lightly set aside. *David E. Brenneman*, 10 B. T. A. 544; *Anna M. Chambers*, 17 B. T. A. 820. Here the testator had made no express provision for payment of the insurance policy premiums, but he had clearly said the petitioner was to receive only " net interest and income." Such language presupposes gross income of the trust from which the trustees should make a deduction of all necessary charges and expenses. We said in *William W. Mead et al., Executors*, 6 B. T. A. 752, 758:

In our opinion expenses which were necessary to be paid out over a number of years in preserving the estate, selling the property and collecting interest or deferred payments on sales, are deductible from the gross income of the estate. Such expenses come under the classification of ordinary and necessary expenses in carrying on a trade or business. Under section 219 of the Revenue Act of 1918 an estate or trust is entitled to the same deductions for such expenses as are allowed to individuals.

Considering the will in its entirety, it was manifestly the intention of the testator that the expenses of preserving the estate, selling the timber and other expenses involved in collecting the gains and profits, were to be deducted from the income of the estate and not from the corpus. The intention of the testator in that regard, while not controlling as to whether the expenses should be deducted in determining the net income for the purposes of the tax, should be given great weight.

Cf. *George W. Seligman, Executor*, 10 B. T. A. 840.

We are of the opinion that " net interest and income," as used in the will, took into account the deduction of necessary charges to

maintain the assets of the *corpus*. The testator had paid such premiums in his lifetime, and it must be assumed that he contemplated, the resources of his estate permitting, the continued payment of them by his executors and the trustees who took over his estate. Nor need there be any confusion between " net income " as used in the will and as it might be applied in determining the tax of the trust; we have said that these are separate questions, and we need not consider here what the respondent would allow to the trustees as a deduction in determining the trust's net income.

The only real question is, then, Was the making of such payments reasonably within the discretion of the trustees as an act necessary to preserve substantial assets of the trust? Upon this we have no doubt. True, the policies might have been surrendered by the trustees at any time and their surrender value received, but when it is recalled that the testator's debtor, whose life was insured, had reached his eightieth year at the time of the testator's death in 1925, it seems only prudent that counsel for the trustees should continue premium payments in the hope of obtaining the face amount of the policies. To make such payments in the circumstances was as much the duty of the trustees as to pay taxes on land embraced within the estate or any other charges, the neglect of which would result in substantial loss to the estate. It may also be pointed out that while the income of the petitioner would be reduced to the extent of such payments, a reciprocal advantage would result to her as soon as the policies matured, either as endowments or on the insured's death, through a substantial increase in the *corpus* from which she drew the income; and it can not be argued, therefore, that these payments went only to increase the interest of the remainderman at the expense of the life tenant.

The present case is clearly distinguishable from the line of cases in which the institution by the trustees of depreciation reserves without express authority in the will has deprived the life tenant of income otherwise distributable to her. *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; *Kaufmann* v. *Commissioner*, 44 Fed. (2d) 144; *Hubbell* v. *Burnet*, 46 Fed. (2d) 446; *Cadman* v. *Commissioner*, 50 Fed. (2d) 763; *Roxburghe* v. *Burnet*, 58 Fed. (2d) 693; *Commissioner* v. *Freuler*, 62 Fed. (2d) 733. Here there had been no distribution of this income to petitioner, no setting up of it as a credit for petitioner or as a reserve to make whole the remainderman.

We are of the opinion, therefore, that a reasonable construction of the will would require the trustees to pay these premiums in order to conserve the estate as well as to do other necessary acts to the same end, and that until deductions of such necessary costs, charges and expenses were made from gross income, " net income " within the meaning of the will could not be determined. It follows that

so much of the income of the trust as was used in making the premium payments in question was not distributable to the petitioner as beneficiary and was improperly added to her income by the respondent.

Petitioner's counsel in his brief, and not before, raised an alternative argument that the petitioner had no taxable income from her husband's estate in 1927, since under local law she took in lieu of dower and therefore as a purchaser for value. No evidence was offered on this point, so we need not consider it.

Nor need any consideration be given to the claim for refund set out for the first time in petitioner's brief, as that issue is raised too late.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*